**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**SCOTT A. STANLEY,**

      **Petitioner,**

**vs.**                                        **Case No. 4:09cv162-SPM/WCS**

**SECRETARY KENNETH S. TUCKER,**[1]

      **Respondent.**

                                             /

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

This cause is before the court for ruling on Petitioner's amended petition for writ

of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Doc. 8.  Petitioner challenges his

conviction and sentence out of the Second Judicial Circuit, in and for Leon County, case

04CF02759, for aggravated stalking after entry of a court order.  *See* Exs. C

---

[1] Kenneth S. Tucker is the current Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent.  Fed.R.Civ.P. 25(d).

(information), E (verdict), and L (judgment).  He was sentenced to three years imprisonment followed by two years probation.  Ex. L, p. 3.  Petitioner raises fourteen claims in support of his petition, asserting ineffective assistance of both trial and appellate counsel.

Respondent filed an answer and the record  in paper form.  Doc. 18.  References to exhibits are to those provided by Respondent unless otherwise noted.  Petitioner filed a reply.  Doc. 19.  Respondent concedes that the petition was timely filed.  Doc. 18, p. 10.

**Conviction and Procedural History**

This case is somewhat unusual as the post conviction proceedings in the trial court  preceded the direct appeal rather than commencing after the appeal.  The evidentiary hearing on Petitioner's Fla.R.Crim.P. 3.850 motion was held in February of 2007, the written order denying the motion (for reasons stated at the close of the hearing) was issued in March of 2007.  Ex. R and U.  A hearing was held on Petitioner's request for belated appeal on November 5, 2007, and the initial brief on belated appeal was signed by counsel on June 24, 2008.  Exs. EE and JJ.  A number of arguments were rejected at the post conviction level as defaulted for not being raised on appeal, and a number of Petitioner's claims against appellate counsel are for failure to raise these claims.

By way of background, Petitioner was charged with aggravated stalking in violation of a court order:

On August 2, 2004, [Petitioner] did knowingly, willfully, maliciously, and repeatedly follow or harass another person, Crystal Berry, after an injunction for protection against repeat violence pursuant to Section

> 784.046, or an injunction for protection against domestic violence pursuant
> to Section 741.30, or after any other court imposed prohibition of conduct
> toward Crystal Berry or that person's property, contrary to Section
> 784.048(4), Florida Statutes.

Ex. C (information).  The information follows the language of the statute, which

provides:

> Any person who, after an injunction for protection against repeat violence,
> sexual violence, or dating violence pursuant to s. 784.046, or an injunction
> for protection against domestic violence pursuant to s. 741.30, or after any
> other court-imposed prohibition of conduct toward the subject person or
> that person's property, knowingly, willfully, maliciously, and repeatedly
> follows, harasses, or cyberstalks another person commits the offense of
> aggravated stalking, a felony of the third degree, punishable as provided
> in s. 775.082, s. 775.083, or s. 775.084.

§ 784.048(4) (2004).

As summarized in the initial brief on direct appeal, Berry obtained an injunction

against domestic violence against Petitioner on July 20, 2004, a copy of which

Petitioner received on July 28, 2004.  Ex. JJ, p. 2; Ex. N (Petitioner's state motion to

vacate, ex. J, R. 178).  The temporary injunction entered on July 20, 2004, included a

notice of hearing on July 28, 2004, to determine whether a final judgment of injunction

would be entered.  Ex. SS.  It was provided that violation of the injunction, "whether or

not at the invitation of Petitioner [Berry] or anyone else," could expose Petitioner to

contempt proceedings or other sanctions.  *Id.*  It provided that Petitioner and Berry have

no contact, directly or indirectly by phone or otherwise.  *Id.*  The minutes of the hearing

held July 28, 2004, reflect that Petitioner and Berry were present, the injunction was

served upon Petitioner, and the case was reset for August 11, 2004.  Ex. N (Petitioner's

state motion to vacate, ex. J, R. 180).

The order resetting hearing on petition for injunction entered on July 28, 2004, provided that Petitioner and Berry were present and the temporary injunction was served.  Ex. N (Petitioner's state motion to vacate, ex. I, p. 2, R. 179).  The hearing was continued until August 11, 2004, with the temporary injunction to remain in full force and effect until that time.   Ex. N (Petitioner's state motion to vacate, ex. J, R. 180).  The order provided that Petitioner was required to appear, and if he failed to then "the Temporary Injunction may be continued, modified or extended."  *Id.*  It provided that "[t]he parties may not agree to violate this injunction and <u>VIOLATION OF ANY TERM OF THIS INJUNCTION IS PUNISHABLE BY JAIL OR FINE</u>.  The Court may modify or dismiss an Injunction upon motion with notice to all parties."  *Id.*  Berry and Petitioner signed the order, under the stamp "Received in Open Court."  *Id.*

On August 2, 2004, Petitioner called Berry's cell phone approximately 30 times, threatened to harm her and himself, and she took the threats seriously.  Ex. JJ, p. 2.  .  As Petitioner continued calling, she went to the police department and turned her cell phone over to Officer Richard Jenkins, the duty officer there.  *Id.*  Jenkins asked Petitioner to stop calling, and Petitioner told Jenkins that attorney Dean LeBouff said the injunction was null and void as Berry had contacted Petitioner (rather than vice versa).  *Id.*, p. 3.  Jenkins again said to stop calling, and Petitioner responded to "[c]ome and get me mother fucker."  *Id.*  Jenkins testified he then contacted the Criminal Career Unit, over objection and motion for mistrial by defense counsel regarding the use of this term.  *Id.*

LeBouff testified at trial, over objection, that Petitioner was not a client, although Petitioner had talked to him about retaining the firm.  *Id.*  LeBouff said that he did not advise Petitioner that the injunction was null and void.  *Id.*

Officer Perry testified over objection that he went out with 20-25 officers to arrest Petitioner, who came out his back door then went back into the house.  *Id.*  Perry said the bomb robot was sent in and observed Petitioner naked and unconscious on the bed, so officers entered the house and arrested Petitioner.  *Id.*, pp. 3-4.

Petitioner testified at trial that he thought the injunction was not in effect because Berry initiated contact and called him numerous times.  *Id.*, p. 4.  According to the appellate brief, Petitioner said "[h]e later got tired of her calls and put his phone on automatic redial to prevent her from calling him."  *Id.*  He said he told Jenkins he talked to attorney Eddie Bauer, not LeBouff, and testified he never threatened Berry.  *Id.*

As clarified in the trial transcript, Petitioner testified that Berry called him first, around 11:00 a.m. on August 2, 2004.  Ex. D, pp. 118-119.  He said he was then dating "Abbie," one of Berry's best friends, and Berry called to ask why he was dating Abbie.  *Id.*, pp. 119, 120.  He claimed that they (people present when he was on the phone) made fun of Berry, he hung up on her, then she called again.  *Id.*, p. 120.  He said she called a few more times, there was a 45 minute or so break, and she called to say she could have him arrested for her calling him.  *Id.*, pp. 121-122.  Petitioner testified Berry said there was an officer there and he asked to speak to the officer, whose voice sounded familiar.  *Id.*, p. 122.  Petitioner did not believe it was an officer and so asked for the person's name and number, and then hung up the phone.  *Id.*  He said he used three way calling to call the number while his friend, Rick Hosey, was listening in on the

call.  *Id.*  Petitioner testified that the officer "got into it with me," and "refused to answer

questions, being very evasive.  He then hung up on me."  *Id.*  Petitioner called the

number again with Hosey on the line, and said again that the person was evasive and

"trying to state he was a police officer, he was going to arrest me for aggravated stalking

or stalking, violation of an injunction, something to that effect."  *Id.*, p. 123.  Petitioner

hung up, Berry called him back and hung up on him, he said he thought it was a joke.

*Id.*  He "got tired of it," and "stuck her number in auto dial," explaining:

> It's what I use to connect to the internet, when I'm out on assignment or
> something, I plug it into my laptop computer.  What it does is it continually
> calls the number and then, when a connection is made and it's lost, it will
> call again.  And it will keep doing it in a loop.
>
> . . . It ties up her phone.  She cannot make any calls to me whatsoever.
> When she turns on her phone, it picks right back up making phone calls.

*Id.*, pp. 123-124.  He said he lost the signal and did not know how many calls it made

and he had no voicemail.  *Id.*, p. 124.

Petitioner testified that at some point thereafter Berry called him again, and a

person claiming to be Officer Jenkins with TPD got on the phone and told Petitioner he

was violating an injunction.  *Id.*  Petitioner did not believe him and asked for his name

and number and an attorney would call back.  *Id.*  Petitioner told him he spoke to an

attorney and thought the injunction was null and void.  *Id.*, p. 125.  In answer to the

question of what law firm, Petitioner explained he said "with the law firm of Dean

LeBoeuf," because "Eddie Bauer is not a well-known person, but Dean LeBoeuf is a

very well-known person."  *Id.*

Petitioner conceded that he called Berry over and over by putting her number on

auto dial.  *Id.*, p. 126.  He admitted to signing for the injunction in court on July 28, 2004,

and admitted that he knew that it provided it would stay in effect until further order of the court.  *Id.*  He said he did not admit to violating the injunction because he did not think it existed.  *Id.*, p. 128.  He admitted he did not receive anything from the court, either written or verbally, telling him the injunction was dissolved.  *Id.*, pp. 128-129.  He admitted that he previously told Officer Hollis he did not remember anything from August 2, 2004, but explained he said this because she was being rude, he did not want to incriminate himself, so he thought saying he did not remember "was probably [the] best legal outlet."  *Id.*, p. 127.  Petitioner said he was asleep when officers came in his house because he took an Ativan at 4:30, and had been drinking.  *Id.*, pp. 127-128.  A juror proposed a question, but the attorneys objected and it was not asked.  *Id.*, p. 129.

The state trial court held an evidentiary hearing in the Rule 3.850 proceeding. Ex. R (transcript of hearing held February 27, 2007).  The reasons for denying Rule 3.850 relief were given at the end of the hearing.  *Id.*, pp. 94-110.  The written order denying relief incorporated the reasons stated on the record at the hearing.  Ex. U.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A state prisoner must first present all federal claims in state court.  § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). He "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845, 119 S.Ct. at 1732; Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004)

(applying this "one complete round" requirement to the state collateral review process as well as direct appeal).  If a claim is not properly presented in state court and procedurally barred from further state court review, a petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). On the other hand, a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  § 2254(b)(2).

For a claim which has been properly exhausted and adjudicated on the merits in state court, review is limited.  The state court's determination of a factual issue is presumed correct, unless the petitioner can rebut the presumption by clear and convincing evidence.  § 2254(e)(1).  If the petitioner failed to develop the factual basis for a claim in state court, an evidentiary hearing in § 2254 proceedings is limited by § 2254(e)(2).  *See also* Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that review under § 2254(d)(1), discussed here ahead, "is limited to the record that was before the state court that adjudicated the claim on the merits," so the federal court may not rely on new evidence developed in the § 2254 proceedings).

Further, "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).  Section 2254(d) requires a petitioner to show that the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

§ 2254(d).[2]  An unreasonable application of federal law is different from an incorrect application under § 2254(d)(1), and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  131 S.Ct. at 786 (citation omitted).  "If this standard is difficult to meet, that is because it was meant to be."  *Id.*

> Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.  Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.  28 U.S.C. § 2254(b). If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.[3]  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in § § 2254(d)(1) and (2) applies.  Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

Harrington, 131 S.Ct. at 787. (citation omitted) (quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

---

[2] In Cullen, the Court did not address whether a district court could choose to hold a hearing under § 2254(e)(2) to determine whether § 2254(d)(2) was satisfied.  131 S.Ct. at 1401, n. 8 and 1411, n. 20.

[3] To excuse a procedural default, as noted in Wainwright and the cases cited *supra*, a petitioner must demonstrate either cause and prejudice or actual, factual innocence.

If the state court issues an opinion, it need not cite or even be aware of controlling Supreme Court cases under § 2254(d).  *Id.,* (citation omitted).  And, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."  *Id*

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under <u>Strickland</u>, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

Harrington, 131 S.Ct. at 788 (quoting Strickland); Premo v. Moore,  131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting Harrington).[4]

Even if deficient performance is demonstrated, a petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068. It is not enough to show counsel's errors had a conceivable effect on the outcome, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  466 U.S. at 687, 131 S.Ct. at 2064; Harrington, 131 S.Ct. at 787-788 (quoting this language).  "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but whether a different result is "reasonably likely."  131 S.Ct. at 791-792 (citing Strickland, other citation omitted). This is not a "more likely than not" standard, but "[t]he likelihood of a different result must be substantial, not just conceivable."  Id., at 693, 104 S.Ct. 2052.""The likelihood of a different result must be substantial, not just conceivable."  Harrington, 131 S.Ct. at 793 (citations omitted).

While Strickland explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of Strickland is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.  The Court also noted that "[a]lthough [these]

_____

[4] Harrington and Premo were decided by the Court on the same day.

principles should guide the process of decision, the ultimate focus of inquiry must be on

the fundamental fairness of the proceeding whose result is being challenged," to

determine "whether, despite the strong presumption of reliability, the result of the

particular proceeding is unreliable because of a breakdown in the adversarial process

that our system counts on to produce just results."  696, 104 S.Ct. at 2069.

"Surmounting *Strickland*'s high bar is never an easy task," as an ineffectiveness

claim functions as a way to present claims not properly presented earlier.  <u>Harrington</u>,

131 S.Ct. at 788 (citation omitted).

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult.  The standards
> created by *Strickland* and § 2254(d) are both "highly deferential," and
> when the two apply in tandem, review is "doubly" so.  The *Strickland*
> standard is a general one, so the range of reasonable applications is
> substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness
> under § 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  *The question is whether there is any*
> *reasonable argument that counsel satisfied Strickland's deferential*
> *standard.*

<u>Harrington</u>, 131 S.Ct. at 788 (citations omitted, emphasis added).  *See also* <u>Premo v.</u>

<u>Moore</u>,  131 S.Ct. 733, 739 -740, 178 L.Ed.2d 649 (2011) (quoting <u>Harrington</u>).

**Legal Analysis**

**Ground One**

Petitioner asserts that trial counsel provided ineffective assistance by "advocating

and representing Stanley pursuant to a non-applicable statute, resulting in a

constructive denial of counsel."  Doc. 8, p. 5.  Respondent seems to concede proper

exhaustion but expressly does not waive the defense.  Doc. 18, pp. 13-14.

The argument is that counsel was ineffective for presenting a defense against the offense of aggravated stalking by credible threat in violation of FLA. STAT. § 784.048(3), when Petitioner was actually charged with aggravated stalking after court order in violation of § 784.048(4).  Doc. 8, pp. 5-6; doc. 18, pp. 13-15 (also quoting the relevant statutory sections).  Petitioner alleges that counsel did not understand the elements of the offense as charged and therefore could not and did not defend against it.  Doc. 8, pp. 5-6.

In denying relief, the state trial court noted that this was an ineffective assistance of counsel claim governed by the two part test of Strickland.  Ex. R, p. 94.  The court considered the entire file including the exhibits and trial transcript, and said there was "overwhelming evidence that there was an injunction in place in the trial and that Mr. Stanley violated that injunction by making repeated phone calls to Ms. Berry," and a police officer testified that Petitioner called the victim approximately 30 times just during the period that Berry was at the police department.  Id., p. 95.  The court said "[i]t appears to me that the strategy employed by Mr. Chin in this case was a strategy to keep the case simple and focused and try to show that whatever Mr. Stanley did, it was not aggravated and did not rise to the level of stalking."  Id.

> What one would wish to paint in a case like this is that . . . Mr. Stanley was perhaps being led on by Ms. Berry, that she was trying to set him up, that he really didn't do anything except maybe technically violate an injunction and he was not really a threat to anybody.  That was the best line of defense in this case and at least was a legitimate strategic line of defense and strategy to follow.
>
> Therefore, to make the argument that the State would have to prove that Mr. Stanley was a credible threat to her, *even though not those words, not technically, legally required* was a legitimate defense strategy.  And if he could get the jury thinking that credible threat was the standard that the

State had to be held up to, then that actually benefitted Mr. Stanley.  It
didn't hurt Mr. Stanley.  And I am not sure Mr. Stanley understands that.
But the credible threat argument was not ineffective counsel.  It was
effective counsel.

. . . In fact, *I do think the concept credible threat can at least be argued
based on the definitions of the jury instructions given in this case*.  It is a
legitimate defense strategy and actually raised the bar for the State, so to
speak, to require the State to try to convince the jury and judge that the
State has to prove credible threat.

Realistically . . . a jury is not going to convict on a charge of aggravated
stalking unless they, in fact, believe that the defendant is a threat or a
credible threat to the victim.  *That is the practicalities of the situation as
opposed to the technical language contained in the statute*.

*Id*., pp. 97-98 (emphasis added).  *See also*, *id*., at pp. 90-91 (definitions of "harass" and

"maliciously" as explained by the court).[5]  Petitioner said Chin told him there had to be a

credible threat for a conviction; Chin, however, said he did not tell him that, and said he

understood Petitioner was charged with aggravated stalking after court order, which

was an distinct from the offense requiring a credible threat.  *Id*., pp. 91-93.

To satisfy § 2254(d), Petitioner asserts that the state court's adjudication of the

claim is contrary to clearly established federal law and based on an unreasonable

determination of the facts in light of the evidence presented.  Doc. 8, p. 6.[6]

---

[5] Petitioner's questioning of Chin at the Rule 3.850 hearing was somewhat
repetitive; the judge decided to "end this with a legal pronouncement," explaining that
"credible threat" was a consideration as to both of terms.  Even if not something that
would be used in jury instructions, credible threat was "certainly something that a lawyer
could in good faith argue to the jury."  *Id*., pp. 90-91.  The court said, "And what I am
hearing is just really the same question being asked repeated times," and understood
Petitioner's point.  *Id*., p. 91.

[6] Petitioner asserts that the state court's adjudication of the claim is contradictory
to the trial court's ruling that, as credible treat was not an element, it should not be part
of the jury instructions.  Doc. 8, pp. 5-6.  The point is not clear as 2254(d) makes no
reference to contradictory adjudications.  Moreover, as clear from the italicized

Specifically, Petitioner contends the state court identified the wrong governing principle,

because his claim supported a finding of constructive denial of counsel.  Doc. 8, p. 6;

doc. 19, pp. 7-8.  Petitioner distinguishes the analysis under <u>Strickland</u> from that under

<u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) as

applied in <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) and

<u>Haynes v. Cain</u>, 298 F.3d 375 (5th Cir. 2002).  Doc. 19, pp. 7-8 (other citation omitted).

He argues that ineffectiveness can be presumed in his case as it falls under the second

exception to satisfying the two part <u>Strickland</u> test: *i.e.*, that counsel completely failed to

subject the state's case to meaningful adversarial testing.[7]

This was the exception relied on by the applicant in <u>Bell</u> and rejected by the

Court.  It is similarly unpersuasive here.

> When we spoke in *Cronic* of the possibility of presuming prejudice based
> on an attorney's failure to test the prosecutor's case, we indicated that the
> *attorney's failure must be complete*.  We said "if counsel *entirely* fails to
> subject the prosecution's case to meaningful adversarial testing." *Cronic,
> supra*, at 659, 104 S.Ct. 2039 (emphasis added).  Here, respondent's
> argument is not that his counsel failed to oppose the prosecution
> throughout the sentencing proceeding as a whole, but that his counsel
> failed to do so at specific points.  For purposes of distinguishing between
> the rule of *Strickland* and that of *Cronic*, this difference is not of degree but
> of kind.

------

language of the trial court in the quotation above, arguing that credible threat was a
necessary showing was a reasonable strategy even though credible threat was not,
technically and legally, a required showing.  Counsel and the court clearly understood
the distinction.  No inconsistency is shown.

    [7] As summarized in <u>Bell</u>, the three possible exceptions recognized in <u>Cronic</u> were
where there is a complete denial of counsel during a critical stage of the proceedings;
where "counsel entirely fails to subject the prosecution's case to meaningful adversarial
testing," and in cases where counsel is called upon to provide assistance under
circumstances where competent counsel likely could not do so.  <u>Bell</u>,  535 U.S. at
695-696, 122 S.Ct. at 1850-51 (quoting <u>Cronic</u>, other citations omitted).

535 U.S. at 696-697, 122 S.Ct. at 1851 (emphasis added, footnote omitted).  The

petitioner claimed counsel failed to produce mitigating evidence at sentencing and

waived closing argument, which the Court found "are plainly of the same ilk as other

specific attorney errors we have held subject to *Strickland's* performance and prejudice

components."  *Id.*, at 697-698, 122 S.Ct. at 1852 (citations omitted).

Here, too, counsel's strategy as found by the state court was to raise the bar for

the state by injecting the issue of whether the state could prove a credible threat.  All

alleged errors of counsel, in this and the grounds addressed ahead, are specific and

clearly "of the same ilk" as other specific attorney error subject to the two part analysis

of <u>Strickland</u>.  Petitioner's argument that the state court should have applied <u>Cronic</u>

rather than the two part test of <u>Strickland</u> is frivolous and is rejected as to this and all

other grounds.

Thus, applying the doubly deferential standard of § 2254(d) and <u>Strickland</u>,

Petitioner is not entitled to § 2254 relief on ground one.

**Ground Two**

Petitioner asserts that counsel conceded guilt to the charged offense in his

opening statement.  Doc. 8, pp. 6-7.  He asserts "that phone records were not offered

by the State, of which counsel was provided a copy and indicated no such calls."  *Id.*, p.

7.  Petitioner alleges he requested the records prior to trial through a letter to the court.

*Id.*  He claims the trial was "a pointless charade upon counsel informing the jury that the

accused committed the charged offense."  *Id.*

As clarified in Petitioner's reply, FLA. STAT. § 784.048(4) provides that a person

who, after entry of a domestic violence injunction, "knowingly, willfully, maliciously, and

repeatedly follows, harasses, or cyberstalks another" commits the offense of aggravated

stalking.  Doc. 19, p. 9.  In opening statement counsel declared that Petitioner called

Crystal Berry several times, using the call back feature of his phone.  *Id.*  Thus,

Petitioner claims, this proved all elements and required a guilty verdict.  *Id.*

Petitioner contends that counsel should not have argued that a credible threat

was a necessary element.  *Id.*, p. 10.  He claims counsel asked him to give a

hypothetical explanation about the repeated calls, and advised he needed to explain the

calls to the jury to establish his credibility.  *Id.*  Petitioner claims "[i]t should be observed

that telephone records in counsel's possession refuted the allegation and established

his actual innocence, which Petitioner requested a copy thereof in a written letter to the

trial judge on February 11, 2005 (See State's Ex. A, p. 2)."  Doc. 19, p. 10.[8]  Petitioner

claims he was compelled to "testif[y] only in an attempt to 'salvage his case' based upon

counsel's actions in conceding guilt."  *Id.*, pp. 10-11 (referencing Ex. R, pp. 58, 87).

Petitioner claims this is equivalent to a forced guilty plea.  *Id.*  Petitioner again argues

this is constructive denial of counsel and subject to review under the <u>Cronic</u> standard.

*Id.*, pp. 12-14.

In his opening statement, counsel said he believed the evidence would show that

Petitioner called Berry:

> They have had a relationship for over a year and he called this woman
> because he was led to believe that this injunction was never made
> permanent, that she had withdrew [sic] the injunction.  And he felt, based

---

[8] The referenced exhibit is a copy of the docket, reflecting a February 11, 2005, docket entry for "LETTER FROM DEFENDANT TO JUDGE HANKINSON NO ACTION (2/10/05)." (Capitalization in original).

upon her representations to him, that there was no lawful injunction
against him prohibiting him from having contact with her.
He called, pursuant to calls that were made to him by her. . . .

Ex. D, p. 36.

Counsel said Berry went into the police station and handed over the phone, and

"Mr. Stanley is on the phone, thinking that there's no injunction, that she indicated and

represented to him that it had been lifted." *Id.*, p. 37. He said Petitioner did not believe

it was an officer who was on the phone, and thought there was no injunction because it

was lifted and they (he and Berry) had had contact. *Id.* "And he puts the phone on call-

back and he called back several times. Nobody ever picks up the phone after that." *Id.*

He told the jury they would have to weigh the credibility of witnesses and the evidence

or lack of evidence in the case. *Id.*, p. 38. Counsel argued that he believed the jury

would find that Petitioner and Berry maybe should not have been in a relationship, "but

was this an aggravated stalking? No. We're talking about phone calls on a call-back

and nothing more, and the scenario in which Mr. Stanley was under the impression that

she had lifted the injunction. That's what this case is about." *Id.*, pp. 38-39.

The trial court found counsel's opening statement was the result of a deliberate

strategy decision,"not a confession of aggravated stalking," and "does not [meet] either

prong of the Strickland test. Ex. R, p. 101.

The trial court also noted, as to other claims, that it was consistent with Chin's

technique in trying other cases that he "went out of his way not to alienate the jury. And

the point of that – that is a trial strategy. That is just not a personality trait. Because in

these cases, one wishes to show that his client is a reasonable person and not a

dangerous person." *Id.*, p. 107. It was noted that "one way to aid that is to demonstrate

that the client's lawyer is a reasonable person and an ethical person.  And a lawyer's credibility often rubs off on client credibility."  *Id.*[9]  This is why lawyers do not necessarily object all the time, as they do not want to come across as trying to prevent the facts from coming out, and "Mr. Chin is particularly good at doing that . . . ."  *Id.*

The prosecution was surely going to prove that an injunction existed and that Petitioner dialed Berry's number many times.  It is a reasonable strategy to concede what will be easily shown in order to strengthen the argument of what (it is claimed) will not be shown.  Petitioner has not shown that the trial court's decision was contrary to clearly established law or based on a unreasonable determination of the facts.  Petitioner's argument that Cronic rather than Strickland applies is rejected.  Petitioner claims specific attorney error in opening argument, a claim which is subject to the two part analysis of Strickland.

**Ground Three**

Petitioner claims counsel was ineffective for failure to request a jury instruction explaining that knowledge of the injunction was an essential element of the offense.  Doc. 8, pp. 7-8.  Respondent concedes this was raised in state court and addressed at the evidentiary hearing.  Doc. 18, p. 25.  The Rule 3.850 court found the jury instructions were correct and also noted there was no appeal, and "those issues could have been handled on appeal and therefore are not proper to be handled on a 3.850 motion."  *Id.*, p. 25, *quoting* Ex. R, pp. 102-103.  Respondent argues that the trial court

---

[9] Petitioner said counsel told him to concede putting Berry's number on autodial to gain credibility with the jury.  *Id.*, p. 28.  This is entirely consistent with counsel making the concession in opening argument.

found the claim procedurally barred and that opinion was affirmed (despite Petitioner's argument on the merits in his appellate brief) so it is barred from review in this court. *Id.*, pp. 25-28.  Respondent also argues that Petitioner defaulted the claim by failing to raise it in his belated appeal. *Id.*, pp. 28-29.  Respondent asserts that cannot show cause and prejudice or alternatively actual innocence.  *Id.*, pp. 28-32.

Respondent's first argument – that the claim is subject to procedural default analysis here because the trial court found it barred in a Rule 3.850 proceeding – is unpersuasive.  It is true, as Respondent asserts and the trial court found, that issues which could or should have been raised on direct appeal are not cognizable under Rule 3.850.  *Id.*, pp. 25-26 (citing Florida cases).  As previously noted, however, this is the unusual case where the Rule 3.850 proceeding preceded the appeal.  *See also,* Doc. 19, p. 25, n. 12 (noting Petitioner had not yet sought a belated appeal when the Rule 3.850 motion was denied).  It was considered defaulted at the time the trial court ruled on the post-conviction motion because there had been no appeal, but it not barred when Petitioner later filed his belated appeal; it is a claim to be reviewed on direct appeal rather than by post conviction motion.  It was therefore defaulted when not raised in the belated appeal.

Petitioner asserts in his reply that, since Respondent claims this could have been raised in the belated appeal, he will address the issue with regard to ground nine (ineffective assistance for appellate counsel's failure to raise it).  Doc. 19, p. 14.  I will do the same.

**Ground Four**

Petitioner asserts that counsel was ineffective for failing to depose witnesses, including the victim.  Doc. 8, p. 8.  He asserts that Dean LeBoeuf testified about being retained by Petitioner, and "[t]rial counsel stated that he was '[p]uckered up' by LeBoeuf testifying because he did not know what LeBoeuf would testify to," and thought that "depositions really don't serve any purpose."  *Id.*, p. 9.

As to Berry, Respondent argues that at the evidentiary hearing, Chin said he did not need to depose her because he heard her testimony at the first trial[10] and thought he had her "nailed," as she claimed to have taken actions to hide herself from Petitioner but had not changed her phone number. Doc. 18, pp. 33-34.  Respondent argues that the state court necessarily found Chin's testimony credible, and its opinion is entitled to deference.  *Id.*, p. 34.

Respondent asserts that counsel's failure to depose LeBoeuf is procedurally barred and Petitioner fails to establish cause and prejudice or actual innocence.  Doc. 18, pp. 35-37.  Petitioner asserts in reply that the factual basis for ground nine "is intended for consideration when assessing the cumulative effect of counsel's deficiencies that resulted in prejudice" and the state court's adjudication is contrary to clearly established federal law for failing to weigh the cumulative errors and examine counsel's performance as a whole.  Doc. 19, p. 15.

---

[10] At the time of the trial at issue here, Chin had already represented Petitioner in a case involving Berry.  Ex. R, p. 77 (Chin to Petitioner at the 3.850 hearing, "I told you after I got the acquittal on the 2003 burglary case, is you should stay away from this woman, this woman is poison, and you didn't.").

Whether properly exhausted or not, Petitioner's claim regarding LeBoeuf is baseless and takes Chin's testimony somewhat out of context.  Mr. Chin said he talked to Eddie Bauer, who said he talked to but had not been retained by Petitioner, and "certainly didn't give him any [advice] that since you broke the injunction, that it is okay to call." Ex. R, p. 63.  He said Petitioner wanted him to invoke the attorney client privilege as to LeBoeuf because (Petitioner told Chin) he did not have discussions with LeBouef or know what he would say.  *Id.*, p. 64.  Chin said "I invoked him on his behalf. I didn't want him – any time an attorney for a defendant is on the witness stand, the attorney representing him is pretty much puckered up to be honest with you."  *Id.*  This was a general statement regarding attorneys and the attitude of questioning a client's former lawyer, not a statement that Chin was unprepared.  Moreover, Petitioner has not identified anything counsel could or should have done differently with respect to questioning LeBoeuf (once the privilege argument was rejected) had he deposed him prior to trial.

Regarding Petitioner's claim that counsel failed to depose Berry, Chin explained that in his opinion, "depositions don't serve any purpose on cases of this nature."  *Id.*, p. 55.  He thought they did in other cases.  *Id.*

> However, when you get into these domestic violence cases, they pretty much develop a life of their own. And what happens is they become, to use the term, Jerry Springerist where things happen. And people have perceptions about domestic violence.  It is either the victim is the stalker or the defendant is the stalker.  Somebody is the victim.

Ex. R, p. 55.  He had seen Berry testify in a previous trial, thought he had "a handle" on what kind of witness she was, "[a]nd one of the things that I find are [sic] most important in terms of credibility of the witness is what they say versus what they do.  And a lot of

times their actions will belie what their allegations would be." *Id.*, pp. 55-56.  He looked

at the case and thought it was a set up based on her actions, and "[i]t wouldn't have

served any purpose to take her deposition." *Id.*, p. 56.  Petitioner claimed that, when

Berry testified that she dialed him while entering the police department, Chin told him he

wished he knew she would say that, but Chin did not remember saying that to

Petitioner.  *Id.*, p. 57.  Chin said it would not have affected his ability to cross examine

Berry, he still had the fact that she never changed her number, the statement was in her

testimony, and he could impeach her with an inconsistent statement.  *Id.*, pp. 58-59.

The court rejected Petitioner's ineffectiveness claim for failing to depose

witnesses, noting it was "a recognized defense strategy of many defense lawyers in this

circuit that wholesale deposition of witnesses is not necessary and is often detrimental."

*Id.*, p. 99.  The deposition informs the prosecution of any weaknesses in the case and to

fix them before trial, rather than surprising them at trial.  *Id.*, pp. 99-100.  The court

accepted Chin's testimony as to why he did not depose certain witnesses, and found

Petitioner had not satisfied either the performance or prejudice prong of Strickland.  *Id.*,

p. 100.

Petitioner has not satisfied § 2254(d) with respect to the state court's adjudication

of the claim that counsel was ineffective for failing to depose witnesses.

He cannot satisfy § 2254(d) with his additional or alternative argument regarding

cumulative error, as there is no "clearly established Federal law, as determined by the

Supreme Court of the United States" on this subject.  *See*, Forrest v. Fla. Dep't of Corr.,

342 F. App'x 560, 564-565, 2009 W L 2568185, at *4-5 (11th Cir. August 21, 2009),

*cert. denied*, __ U.S. __, 129 S.Ct. 932 (2009).[11]  *See also*, Becker v. Luebbers, 578

F.3d 907, 914, n. 5 (8th Cir. 2009), *cert. denied*, 561 U.S. __, 130 S.Ct. 3520, 177

L.Ed.2d 1103 (2010) (rejecting argument "that the cumulative effect of [counsel's]

alleged errors establishes prejudice" as no individual claim constituted defective

representation; "[e]ven if we were to deem some aspect of counsel's performance

deficient under *Strickland*, any prejudice analysis would have to be limited to

consideration only of the consequences of the constitutionally defective aspects of

representation, not an accumulated prejudice based on asserted but unproven errors . .

. .").  Indeed, "the totality of the evidence before the judge or jury" is considered in

determining prejudice, and while a "sufficiently egregious and prejudicial" isolated error

may be sufficient, "it is difficult to establish ineffective assistance when counsel's overall

performance indicates active and capable advocacy."  131 S.Ct. at 791, *quoting* Murray

v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).[12]

-------------------------

[11]The Eleventh Circuit there noted that "[t]he Supreme Court has not directly
addressed the applicability of the cumulative error doctrine in the context of an
ineffective assistance of counsel claim," but "has held, in the context of an ineffective
assistance claim, that 'there is generally no basis for finding a Sixth Amendment
violation unless the accused can show how specific errors of counsel undermined the
reliability of the finding of guilt,'" quoting United States v. Cronic, 466 U.S. 648, 659, n.
26, 104 S.Ct. 2039, 2047, n. 26, 80 L.Ed.2d 657 (1984).  "In light of *Cronic* and the
absence of Supreme Court precedent applying the cumulative error doctrine to claims
of ineffective assistance of counsel," the Forrest court said, "the state court's holding is not
contrary to or an unreasonable application of clearly established federal law."  342 F.
App'x at 565.  *See also*, Ballard v. McNeil, 785 F.Supp.2d 1299, 1335, n. 20 (N.D.Fla.
2011) (*quoting* Forrest and Cronic).

[12]  The court views the totality in determining prejudice resulting from counsel's
alleged errors because

> [s]ome of the factual findings will have been unaffected by the errors, and
> factual findings that were affected will have been affected in different

**Ground Five**

Petitioner asserts ineffective assistance of counsel for failing "to subject the prosecution's case to meaningful adversarial testing." Doc. 8, p. 9. He alleges that the defense, as supported by his testimony, was that the victim told him she dissolved the injunction, and did so in the presence of Jarred Duncan, Richard Hosey, and Jen (a girlfriend of Hosey). *Id.*, p. 10. Petitioner asserts that the victim was his friend and was spending time with him before this incident, and unknown to him, the victim and Mustafa Dag filed 17 false charges against him. *Id.* Petitioner makes quite a few allegations regarding Dag, but apparently does not fault counsel for failing to call Dag as a witness. *Id.*, pp. 10-12.

As summarized by Respondent,

Overall, the sum and substance of Petitioner's claim is that trial counsel was ineffective for failing to attack the victim's credibility at trial by an assortment of means, but primarily through presentation of evidence detailing his and the victim's turbulent history.

Doc. 18, pp. 37-38. Respondent asserts that this claim was rejected on the merits by the state court following an evidentiary hearing, and Petitioner raised the issue on appeal. *Id.*, p. 38. Respondent concedes the claim appears exhausted but expressly

---

ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

Strickland, 466 U.S. at 695-696, 104 S.Ct. at 2069. Taking unaffected findings and "due account of the effect of the errors on the remaining findings," the court determines whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.*

does not waive exhaustion.  *Id.*  Petitioner asserts the state court erred in applying

Strickland (doc. 19, pp. 16-17), a claim which is rejected.

The state court noted that counsel's strategy was to keep the case simple and

focused, and to show that whatever Petitioner did, it was not aggravated or did not rise

to the level of stalking based on the fact that the victim had not even bothered to change

her phone number.  *Id.*, p. 38 (quoting Ex. R, pp. 95-99).  The court noted that while

Petitioner "apparently thinks that it would have been more appropriate to bring in a

whole host of other collateral issues outlining the detailed background between them," it

was a counsel's sound defense strategy not to do so.  The court reasoned:

> [I]f one were to open the door and bring in all of this collateral evidence,
> what you would have painted in front of the jury would have been the risk
> that you have someone in Mr. Stanley who was obsessed with Ms. Berry,
> who had a violent, uncontrollable temper and was considered dangerous
> by law enforcement.
>
> This is exactly the opposite of the picture that one would wish to paint in a
> case like that.

Ex. R, pp. 96-97.  The court then continued by explaining the picture the defense would

want to paint in this case, which was quoted in the discussion as to ground one, *supra.*

*Id.*, p. 97.

The court's findings were supported by Chin's testimony, that Petitioner wanted

to create a defense based on collateral matters, but Chin thought "that the more of this

that I did bring up, the more the jury would look at him as some focused, pathological,

stalking, potentially dangerous defendant."  Ex. R, pp. 52-53.  He said "that was my

major concern that [Petitioner] didn't know how to present himself and how to be

perceived favorably by other people.  And he would burn down the house to roast the

pig." *Id.*, p. 53.  The court explained to Petitioner that "Mr. Chin's defense in this case was to try to show that you were not obsessive, you were not dangerous and you were not scary," to turn it into at most a misdemeanor conviction; counsel agreed that was what he was trying to do.  *Id.*, p. 74.  Chin told Petitioner he was trying to "save your case from those collateral issues," and "the State was just dying to bring in stuff about you and these injunctions and prior conduct," whereas counsel wanted to restrict the case to the phone calls on one date.  *Id.*, pp. 75-76.

Petitioner responds that <u>Cronic</u> rather than <u>Strickland</u> controls because counsel completely failed to subject the prosecution's case to adversarial testing, and this court is compelled to hold an evidentiary hearing to develop facts in support of this claim. Doc. 19, pp. 16-17.  For the reasons previously stated, <u>Strickland</u> governs this claim. Petitioner has not satisfied the doubly deferential standard of § 2254(d) and <u>Strickland</u>.

**Ground Six**

Petitioner asserts ineffective assistance of trial counsel for coercing inaccurate and damaging testimony, by asking the victim if she relocated after obtaining the injunction, and suggesting that she went to the extreme of moving out of fear, but was stupid for failing to change her telephone number.  Doc. 8, p. 11.  Petitioner alleges that the victim actually asked him for assistance in moving, because her lease was about to expire, only two days before obtaining the injunction.  *Id.*

Respondent contends that this particular claim of ineffectiveness was not presented to the state court by Fla.R.Crim.P. 3.850 motion or addendum, but was raised at the evidentiary hearing, denied on the merits by the state court, and raised on

appeal.  Doc. 18, pp. 45-46.  Though it therefore appears the claim was exhausted, Respondent expressly does not waive exhaustion.  *Id.*, p. 46.

Petitioner responds that this claim "is intended for consideration when assessing the cumulative effect of counsel's deficiencies that resulted in prejudice."  Doc. 19, pp. 17-18.

As discussed above, Petitioner cannot satisfy § 2254(d) with respect to any cumulative error claim.  Counsel's impeachment of Berry and his strategy of questioning whether, given her failure to change her telephone number, she would have perceived Petitioner as a threat, has been discussed above.  *See also* Ex. R, pp. 76-77 (Chin explaining his experience in domestic cases, the way the State looks at the situation as opposed to the way the defense looks at it, "[a]nd the problem with jury trials, Mr. Stanley, is the jurors are somewhere in that broad spectrum," and how the accusation of false claims might be viewed).  This was a reasonable strategy as the trial court found. Petitioner has not shown entitlement to relief under § 2254(d) and <u>Strickland</u>.

**Ground Seven**

Petitioner asserts that the state court abused its discretion in the belated appeal proceedings by denying Petitioner the opportunity to represent himself on appeal, and this denied due process.  Doc. 8, p. 14.  He claims that appointed counsel James Banks "admitted in a Bar complaint that he was previously removed from representing Stanley, but refused to withdraw from the case," and raised only "one trivial issue."  *Id.*  Petitioner alleges that he tried to file a pro se brief which was stricken, and moved to proceed pro se or to allow his family retain private counsel.  *Id.*  "The futile appeal resulted in the

conviction being affirmed and subsequent claims of ineffective assistance of appellate counsel were 'denied.' "  *Id.*

Respondent asserts that Petitioner alleged the facts in support of this claim but did so only in the portion of his state court petition titled "<u>PROCEDURAL HISTORY OF THE CASE</u>," thus not properly exhausting the issue.  Doc. 18, pp. 49-50, citing Ex. UU, pp. 2-4.  The exhibit does not support the statement; Ex. UU is a one page order dated May 13, 2009, stating "this proceeding shall be treated as a petition alleging ineffective assistance of appellate counsel."  Respondent also cites Ex. TT, as an "all writ" petition filed in the Florida Supreme Court, and argues that court lacked jurisdiction and dismissed on that basis.  *Id.*, p. 50, citing Ex. TT.  Without waiving the procedural default defense, Respondent asserts that Petitioner cannot show cause for his default because he could have raised the claim rather than including it only as part of the procedural history, *and* that he cannot establish prejudice because the claim fails on the merits.  *Id.*, pp. 51-52 (citations omitted).

Petitioner responds that he raised the claim in a number of motions to the First District Court of Appeal, specifically in his second motion to "denounce" counsel.  Doc. 19, pp. 18-19, referencing Ex. QQ to the answer.  In the second motion to "denounce," filed pro se, Petitioner said Banks "was previously removed from representing [Petitioner] in lower court case 2005-CF-1616 due to ineffective assistance of counsel," and that Petitioner filed a complaint against Banks with The Florida Bar.  Ex. QQ. Petitioner asserts that "[t]he DCA ruled on the claim in a written order (Ex. A), which the State omitted from its Answer."  Doc. 19, p. 18.  Exhibit A to the reply is an order in

Case No. 1D08-1292, dated December 9, 2008, denying the pro se motion to "denounce" counsel filed November 24, 2008.  Doc. 19, Ex. A.

There is no need to determine whether the claim was procedurally barred or if Petitioner can demonstrate cause and prejudice, a difficult determination given Respondent's reference to the either the wrong exhibit or what may be a missing part of that exhibit.  The claim is without merit, and the court should deny it for that reason. *See* § 2254(b)(2) (habeas petition may be denied on the merits notwithstanding failure to properly exhaust available State remedies).  Petitioner's point is that he was denied the right to represent himself on direct appeal, which is not a constitutional violation. Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 160-164, 120 S.Ct. 684, 690-692, 145 L.Ed.2d 597 (2000) (finding no right to self-representation on direct appeal under the Sixth Amendment or Due Process Clause).

**Ground Eight**

Petitioner asserts ineffective assistance of appellate counsel[13] for failing to raise on appeal the introduction of testimony which was relevant only to demonstrate bad character.  Doc. 8, p. 15.  He claims the prosecution improperly elicited testimony about the method and number of officers involved in his arrest, whether they had their weapons drawn, and whether Petitioner was dressed.  *Id.*, citing the trial transcript (Ex. D) at pp. 13, 17, 19, 95-98.  That the prosecutor referenced this evidence in closing argument, Petitioner claims, demonstrates the evidence was used solely to prove bad

---

[13] The Strickland standard applies to ineffective assistance of appellate counsel claims.  Smith v. Robbins, 528 U.S. 259, 285-286, 120 S.Ct. 746, 764, 145 L.Ed.2d 746 (2000), *citing* Strickland and Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

character.  *Id.*, citing the transcript at 156-159.  He faults appellate counsel for failure to properly raise this, claiming counsel "merely declared that Stanley was prejudiced by the SWAT team being called 'Career Criminal Unit,' " and analogized it to testimony about "high crime areas."  *Id.*, p. 16.

Respondent concedes that Petitioner presented this ineffectiveness claim in a Fla.R.App.P. 9.141(c) habeas petition filed in state court and therefore may have exhausted the claim, but does not waive exhaustion.  Doc. 18, pp. 53-54. Respondent notes that the issue was raised prior to trial by motion in limine, which was denied.  *Id.*, p. 54.  Respondent asserts that appellate counsel's brief was not limited to the mention of the Career Criminal Unit, but encompassed the collateral acts argument.  *Id.*, pp. 54-55, citing Ex. JJ.  Respondent argues that counsel cannot be deemed ineffective for failing to make an argument that was, in fact, made.  *Id.*

The single issue raised on appeal was "whether the court erred in allowing the prosecutor to introduce testimony about the appellant's arrest."  Ex. JJ, p. 5.  As summarized in the statement of the case and facts, prior to trial "the defense moved in limine to prevent the State from presenting testimony related to the Appellant's arrest and the use of the SRT (SWAT) team and a robot in the arrest of the appellant.  Said motion was granted in part and denied in part."  *Id.*, p. 2, referencing the transcript (Ex. D in this record) at pp. 15-17.[14]   In opening statement the prosecution referred to an officer as a member of the TAC team over objection.  *Id.*[15] (citation to transcript

_____

[14] Special response team (SRT); special weapons and tactic (SWAT) team.

[15] Tactical Apprehension and Control (TAC) team.

omitted).  Officer Jenkins told Petitioner to stop calling Berry or he would be arrested, and Petitioner responded to "[c]ome and get me mother fucker."  *Id.*, p. 3.  Jenkins said he contacted his Career Criminal Unit.  *Id.*  Petitioner's objection to this reference and motion for mistrial were denied, but the court instructed the jury that Petitioner was not a career criminal.  *Id.*  Officer Perry testified over objection that he and 20 to 25 officers went to arrest Petitioner, who came out the back door and went back into the house.  *Id.*, p. 3.  A bomb robot was sent in, Petitioner was observed naked and unconscious in bed, and they went in and arrested him.  *Id.*, pp. 3-4.

> Appellate counsel set forth this "summary of arguments:"

> This Court should hold that the trial court abused its discretion when it permitted the prosecutor to reference the status of Officer Perry as a TAC team member, and when it allowed the prosecutor to admit testimony concerning the circumstances surrounding Appellant's arrest.  The challenged evidence was irrelevant to establishing the elements of aggravated stalking, and the danger of prejudice to Appellant greatly outweighed any probative value the evidence may have had.  Therefore, this court should find error and remand for a new trial.

*Id.*, p. 6.

> Counsel argued that it was error to allow testimony regarding the arrest, that "[t]his case concerns admission of evidence of circumstances surrounding the arrest of Appellant that did not pertain to the material elements of aggravated stalking."  *Id.*, p. 7.  He set forth the elements of aggravated stalking, asserted that evidence about the arrest was irrelevant, "and where the probative value of the evidence is relevant solely to bad character or propensity or is outweighed by the danger of undue prejudice to the defendant, it is inadmissible."  *Id.*, p. 8 (citation to statute omitted, collecting cases).  He

argued that the court improperly allowed the prosecutor to reference this inadmissible

arrest evidence in opening statements and throughout trial.  *Id.*, pp. 7-8.

In his brief counsel discussed two Florida cases dealing with evidence as to the

area of an arrest as associated with drugs or with high crime, holding that such

evidence was inadmissible.  *Id.*, pp. 9-10.  He contended:

> Like blanket statements regarding arrests made in high crime areas, the
> testimony at issue was irrelevant to proving the material facts necessary to
> satisfy the elements of aggravated stalking. The testimony could achieve
> no result but to bring attention to Appellant's erratic behavior and paint him
> as a dangerous suspect.  This permitted the jury to find guilt by
> association, the same result rejected by the courts [in the two cases
> discussed], because a decision could be made by inference that the
> extraordinary police response was necessary as, according to the
> improperly admitted evidence and opening argument, Appellant was a
> dangerous recidivist criminal.  The evidence made no logical connection to
> the elements of aggravated stalking, and its probative value was greatly
> outweighed by the danger of prejudice to Appellant.

*Id.*, pp. 9-11.  He argued the evidence was irrelevant to the offense, went only to

character, and "tt]he jury, as the sole finder of fact, should not have conclusions made

for it by the state, the very body it is to act as a check against, before it deliberates over

evidence."  *Id.*, p. 11.  Counsel urged the court to "tak[e] the route that would guarantee

due process and avoid reinforcing government behavior" such as this, by reversing and

remanding for a new trial.  *Id.*

The State addressed the admission of this evidence in its answer brief on direct

appeal, arguing that the evidence was relevant, extremely limited, and, even the trial

court abused its broad discretion, the error was harmless beyond a reasonable doubt.

Ex. OO.

Replying to Respondent's argument that the issue was raised, Petitioner quotes from the prosecutor's closing argument, argues that the circumstances of his arrest were irrelevant, that "[t]he State undermines criminal due process requirements by declaring the accused could not be believed based on his arrest and incarceration while awaiting trial," and that "[i]f an arrest can be used as proof of guilt, it obviates the need for due process of law guaranteed by the Fourteenth Amendment."  Doc. 19, pp. 21-22. In response to the argument that the introduction of this evidence was raised by appellate counsel, Petitioner asserts that "appellate counsel never once mentions or references the foregoing material," but instead "vaguely declares that evidence concerning Petitioner's arrest was improperly permitted and then compared the broadly asserted error to drug trafficking areas."  *Id.*, p. 22.  He reiterates argument as to why the evidence was inadmissible and prejudicial.  *Id.*, pp. 22-23.

Petitioner's characterization of the appellate counsel's argument is not supported by the brief.  I can discern no appreciable difference between the argument he claims counsel should have made and appellate counsel's actual argument.  To the extent there is a difference in the way it is phrased by Petitioner, he has not shown attorney error for failing to raise the issue only slightly differently, or that any difference so slight could possibly have affected the outcome.  Applying the doubly deferential standards of § 2254(d) and <u>Strickland</u>, Petitioner cannot prevail on this claim.

**Ground Nine**

Petitioner asserts ineffective assistance of appellate counsel for failing to raise the issue of improper jury instructions as to a particular element of the crime.  Doc. 8, p. 16.  Specifically, Petitioner claims that he disputed that he had knowledge of the fact

that the injunction was in effect.  *Id.*  He contends that such knowledge is an essential element of the offense, and that the jury must be so instructed when knowledge is disputed at trial.  *Id.*  Petitioner notes that the post conviction court said the issue should be raised on appeal but was not.  *Id.*

Respondent concedes that this was raised as one of four grounds in Petitioner's Fla.R.App.P. 9.141(c) petition.  Doc. 18, p. 56, referencing Ex. UU, pp. 6-8.  The index to Respondent's exhibits also identifies Ex. UU as "[*p*]*ro se* state petitioner for writ of habeas corpus – ineffective assistance of appellate counsel," but the Ex. UU before me is a one page order declaring that "this proceeding shall be treated as a petition alleging ineffective assistance of appellate counsel."  Ex. UU.  The petition was per curiam denied without opinion.  Ex. VV.  Respondent concludes that the claim appears to be exhausted, but expressly does not waive the exhaustion requirement.  Doc. 18, p. 56.

In the end, this claim is without merit but it will take me some time to review Florida law to see why that is so.  Respondent agrees that knowledge of an injunction is an element of aggravated stalking after a court order or injunction, and that Petitioner's knowledge as to whether the injunction was in effect was disputed at trial.  *Id.*, pp. 56-57.  As trial counsel made no objection to the lack of instruction on this element, it was not properly preserved and could only be considered on appeal if deemed fundamental error under state law.  *Id.*, p. 58.

Respondent notes that in Gaspard v. State, 848 So. 2d 1161 (Fla. 1st DCA 2003), the appellant presented evidence that he did not know that the injunction was in effect at the time of the alleged stalking, and the court found fundamental error for failing to instruct that knowledge of the injunction is an element of the offense.  *Id.*, pp.

57-58.  According to Respondent, Petitioner relied on Gaspard in his state court claim of

ineffective assistance of appellate counsel.  *Id.*, pp. 59-60, citing Exs. KK and UU.[16]

The state court denied relief without discussion.  *Id.*, p. 60, citing Ex. VV.  Respondent

claims, however, that the jury instructions "viewed as a whole, adequately conveyed to

the jury that in order to convict for aggravated stalking after court order/injunction, it

must find as an element thereof that Petitioner knowingly violated a court

order/injunction."  *Id.*, pp. 60-61, citing Ex. D, p. 136.

Petitioner quotes at length from Gaspard in his reply, argues that "his knowledge

of an active injunction" was disputed, and that the prosecutor told the jury Petitioner's

knowledge of the injunction did not matter.  Doc. 19, pp. 24-25, citing the transcript at

pp. 154-155 (other references to the transcript omitted).

Petitioner mischaracterizes the prosecution's closing argument.  Defense counsel

argued that there was an injunction, but when the person who sought the injunction

"kisses and makes up," initiates contact, and represents the injunction is not in place,

most people would think they could have contact.  Ex. D, pp. 144-145.  He argued:

> Now, did he knowingly, did Mr. Stanley knowingly violate that injunction?
> You've got to know.  If you're told otherwise and it's a mistake of fact
> based upon the person who got the injunction, based upon
> misrepresentation or subterfuge, how can you knowingly violate
> something that you do not believe is in effect to begin with, when there's
> initiated contact by the petitioner, by Ms. Berry?

---

[16] Petitioner cited Gaspard in his second motion to renounce counsel.  Ex. QQ, p.
2 (arguing that Gaspard established a basis for reversal which appellate counsel failed
to raise).

Ex. D, p. 146.  He argued that Petitioner was operating under a mistake of fact caused

by Berry, that "[h]e's the victim of circumstance in this case insofar as he's led to believe

that there's not an injunction."  *Id.*, p. 150.  He argued:

> [I]f you're standing at the juncture of wondering . . . did he knowingly and
> willfully and maliciously violate an injunction or was he set up, should I
> believe Crystal Berry beyond and to the exclusion of every reasonable
> doubt, can I embrace her testimony and have an abiding conviction of
> guilt, was the defendant equally reasonable in what he says?  Do you
> have a reasonable doubt in this case?  Are you sitting there mulling, well,
> which way did it go, who broke up with who,[17] who's mad at who, what's
> going on here and all of these questions are mulling through your head,
> and you're not sure about which way to go, well guilty or not guilty, there's
> this injunction, I'm not sure, well, maybe because, technically, the
> injunction is in place, even though he's told it isn't in place by a person
> who got the injunction, where should I go and you are sitting there
> wavering and vacillating, that's reasonable doubt.  That's reasonable
> doubt.  And your verdict should reflect that.

*Id.*, p. 152-153.

In response the prosecutor argued there was no question that an injunction had

been entered and served on Petitioner in open court on July 28, 2004.  *Id.*, p. 154.  The

injunction prohibited contact with Berry, and provided it remained in place until further

order of the court.  *Id.*  The prosecutor argued:

> The parties do not get to decide whether or not this injunction is still in
> force or not.  So, even if you want to believe all this nonsense about Ms.
> Berry telling him that the injunction was no longer in force, *it doesn't
> matter*.  What matters is the injunction was in force and there's no
> reasonable belief or reason for the defendant to believe that that injunction
> was no longer in effect.
>
> He was there in the court, signed a document, received a copy of the
> injunction.  And it specifically – they're told by the Court that it's in effect
> until it's either going to be some written order of the Court or some verbal

---

[17] This was a question at least one juror was interested in, it was presented to the
judge as a question to be asked of Petitioner, but it was not asked.

> order of the Court.  And it also tells the respondent specifically in the
> injunction that even if [Berry] was to initiate contact, it''s still a violation of
> the injunction.

*Id.*, pp. 154-155 (emphasis added).  The prosecutor argued that the clause was there

because it is the court that decides whether an injunction is in force.  *Id.*, p. 155.  She

argued it was not reasonable to believe Petitioner's testimony, that Berry told him it was

not in effect, but "even if it was true, I'm telling you, *it still wouldn't matter* because the

fact that she told him, it's still in the injunction that these people can't decide to alter or

change it, only a court can do that."  *Id.*  Counsel also pointed out that LeBoeuf testified

he would not advise, and that "none of his associates, including Mr. Bauer, told Scott

Stanley that the injunction would not be in effect if the victims had contacted him."  *Id.*,

p. 157.  "There was no reason for him to believe that injunction was not in place."  *Id.*, p.

158.

Petitioner's attorney admitted that there was an injunction which was in force,

though Petitioner "was led to believe otherwise."  *Id.*, p. 160.  He argues that technically

there was an injunction, but "whether or not it's a knowing, willful, malicious, and

repeated violation of that injunction, can you say that?"  *Id.*, p. 160.  He asked if the jury

had an abiding conviction of guilt that Petitioner "knowingly, willfully, maliciously and

repeatedly harass[ed] Ms. Berry?"  *Id.*  He argued that "abiding" was a strong word, and

at best the state established, "well, since he was wrong and even though he didn't

know, but there was a violation of a valid injunction, well, maybe he's guilty of that.  But,

has that arose [sic] to an aggravated stalking?"  *Id.*, pp. 161-162.  He conceded there

was a technical violation of the injunction, but there needed to be more, and they could

find guilt if they found unreasonable Petitioner's explanation that Berry told him she had

lifted it. *Id.*, p. 164.

Under § 2254(d), Petitioner must show there was no reasonable basis for the

state court to deny relief.  If there is any reasonable argument that counsel's

performance was reasonable, or that there was no prejudice to the outcome, then the

claim cannot survive the doubly deferential standard of § 2254(d) and Strickland.

Gaspard was an aggravated stalking case pursuant to FLA. STAT. § 784.048(4).

In that case, the defendant "presented evidence at trial that he did not know that the

injunction was *in effect at the time of the alleged offense.*"  848 So. 2d at 1162

(emphasis added).  The court held that "knowledge by an accused that an injunction is

in effect is an essential element of the offense."  *Id.*  The court determined that the

failure to give such an instruction was fundamental error.[18]  *Id.*  The court relied on State

v. Johnson, 676 So. 2d 408 (Fla. 1996).

The issue in Johnson was double jeopardy, whether the defendant could be

prosecuted for criminal contempt and for aggravated stalking based on violation of the

same injunction, prohibiting him from, *inter alia*, contacting and entering the residence of

a specified person.  Double jeopardy analysis followed Blockburger v. United States,

284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and required identification of the

elements of both offenses.  The court in Johnson found that "[t]he only elements

necessary to prove the contempt offense were knowledge of the injunction and a willful

---

[18] To like effect is Cazeau v. State, 873 So. 2d 528, 529-530 (Fla. 4th DCA
2004), finding fundamental error where defendant's "knowledge of the injunction was a
disputed issue at trial" and there was no instruction that the jury had to find that the
defendant had "knowledge of the injunction."

violation of that injunction," whereas the elements of aggravated stalking "are *knowledge of an injunction* and knowingly, willfully, maliciously, and repeatedly following or harassing the beneficiary of the injunction."  676 So. 2d at 411 (emphasis added, summarizing the statute).[19]

    Livingston v. State is also an aggravated stalking case.  The defendant there was charged with aggravated stalking and violating an injunction against repeat violence. 847 So. 2d 1131, 1132 (Fla. 4th DCA 2003).  He was served with the temporary injunction, which set a date for a hearing on extension of the injunction, and provided that he was deemed to have knowledge of and would be bound by any further injunction.  *Id.*  He failed to appear at the hearing, and though the permanent injunction (entered at the extension hearing) was mailed to him, there was no showing that it was served upon him or that he had actual knowledge of it.  *Id.*, at 1132-1133.  The court held that failure to serve the permanent injunction was fatal to the conviction for violating the injunction because Family Law Rule 12.610(c)(3)(B)(ii) requires that a permanent injunction be served upon the respondent, but the conviction for aggravated stalking was affirmed.  *Id.*, at 1133.  The court no requirement in the statute that the *permanent* injunction actually be served, and further reasoned:

> [a]ctual notice of the injunction is not an essential element that must be proved by the state beyond a reasonable doubt, as is the case in a contempt proceeding for violation of the injunction.  *The state must prove*

---

[19] The court determined that these were separate offenses, as "[e]ach of the two offenses contains an element not contained in the other.  Criminal contempt requires proof of entering the residential premises, which the aggravated stalking offense does not; aggravated stalking requires proof of maliciousness which the contempt offense does not."  *Id.*

*only that an injunction or some other restriction for protection was in place when the accused repeatedly followed or harassed the victim.*

*Id.*, at 1134 (emphasis added).  There was evidence that he "had been served with a temporary injunction, notified of the date and time of the hearing for extending the injunction, and, by language contained in the temporary injunction, made aware that he would be bound by issuance of a permanent injunction and any other matters determined at the hearing."  *Id.* (footnote omitted).  In other words, the defendant knew that an injunction was in effect.

Proof of service of an injunction is sufficient to prove knowledge of the injunction in a charge of aggravated stalking.  Canavan v. State, 38 So. 3d 885, 887 (Fla. 2d DCA 2010), citing Robinson v. State, 840 So. 2d 1138, 1139 (Fla. 1st DCA 2003) (reversing conviction for violation of domestic violence injunction as "[t]he State failed to establish that appellant knew the permanent injunction had been entered against him, either through proof that [he] had been served with the permanent injunction, or through proof that [he] had some other notice.") (citations omitted).  In Canavan, the court said: "To prove aggravated stalking, the State must prove the same conduct [as simple stalking], plus the existence of an injunction and the *defendant's knowledge that the injunction had been entered against him.*"  38 So. 3d at 887 (emphasis added).  The court agreed the State could "prove that the defendant has actual knowledge of the permanent injunction as a result of actions other than service of process," but disagreed with "dicta" in Livingston that knowledge of the injunction is not an element of aggravated stalking. 38 So. 2d at 887 and n. 1.  The temporary injunction had expired, there was no proof of service of the final injunction, and the temporary injunction "did not contain any

language advising him that he would be bound by the terms of any injunction issued at the scheduled final hearing." *Id.*

In summary, while not entirely clear, it appears that in Florida, knowledge that an injunction is in effect at the time of the offense is an element of the offense of aggravated stalking pursuant to FLA. STAT. § 784.048(4).  The element is simply that an injunction was in existence and that the defendant knew of the existence of the injunction at the time of the offense.  While this is entirely a matter for Florida courts to decide, it appears to me that the court here should have instructed the jury as to this element of this offense as so defined.

In Florida, "[f]ailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal."  State v. Delva, 575 So. 2d 643, 645 (Fla. 1991) (collecting cases).  In Delva, the defense was that he did not know the package of cocaine was in his car, but never argued that he knew of the package but did not know what was in it.  *Id.*  Knowledge that the substance was cocaine was an essential element of the offense, but "[b]ecause knowledge that the substance in the package was cocaine was not at issue as a defense, the failure to instruct the jury on that element of the crime could not be fundamental error and could only be preserved for appeal by a proper objection."  *Id.*

That is the case here.  Here, there is no dispute at all that an injunction was in existence and Petitioner knew of the existence of the injunction at the time he committed the offense.  As explained above at pages four and five, the temporary injunction was issued and served on Petitioner in open court on July 28, 2004, and reset

for hearing on August 11, 2004.  The temporary injunction provided that the terms "may

not be changed by either party alone or by both parties together.  Only the Court may

modify the terms of this injunction," and that a violation "whether or not at the invitation

of Petitioner [Berry] or anyone else," could subject Petitioner to contempt proceedings.

The order setting the hearing for permanent injunction, which both Petitioner and Berry

signed in court, advised that "[t]he parties may not agree to violate this injunction and

VIOLATION OF ANY TERM OF THIS INJUNCTION IS PUNISHABLE BY JAIL OR

FINE.  The Court may modify or dismiss an Injunction upon motion with notice to all

parties."  Petitioner at trial conceded that he signed for the injunction in court on July 28,

2004, that he knew that it provided it would stay in effect until further order of the court,

and that he did not receive anything from any court in Leon County, either orally or in

writing, telling him the injunction was dissolved.  Ex. D, pp. 126-129.

Petitioner's defense, that he thought that the injunction would not be in effect if

the victim made contact with him or his lawyer told him so, is nonsense, though given

the facts dealt to his counsel, it was the best that counsel could do, under the

circumstances.  As a matter of Florida law, an injunction against domestic violence

remains in effect until further order.[20]  It is without dispute that the court did not modify

---

[20] A permanent domestic violence injunction remains in effect until modified or dissolved.  Samanka V. Brookhouser, 859 So. 2d 1190, 1190 n. 1 (Fla. 2d DCA 2005), citing FLA. STAT. § 741.30(6)(b) (§741.30(6)(c) in 2004).  A temporary domestic violence injunction remains in effect for 15 days, a hearing must be set within the 15 days, but the temporary injunction may be "extended if necessary in full force and effect during any period of continuance." § 741.30(5)(c) (2004).  As noted above, the hearing was continued in this case and the temporary injunction was extended to August 11, 2004.  This temporary injunction was in effect when Petitioner committed this offense.

or dismiss the injunction, that a court order was needed to render the injunction no longer effective, and Petitioner knew it.

In summary, fundamental error has not been shown.  Indeed, it was not error of any sort since Petitioner did not dispute that this element of the offense was proven. Under the doubly deferential standard of § 2254(d) and Strickland, Petitioner is not entitled to relief on this claim as a claim of appellate attorney error or, as raised in ground three, as trial counsel error for failing to ask for this jury instruction.

**Ground Ten**

Petitioner claims ineffective assistance of appellate counsel for failing to appeal the issue of "the continuous abuse of discretion by the trial court, which prejudiced the defense."  Doc. 8, p. 17.  Respondent again agrees that while it appears the claim may be exhausted, the exhaustion defense is not waived.  Doc. 18, pp. 63-64.  Respondent asserts that the court's interruptions of Petitioner's testimony, as well as rulings on relevance, were proper as part of the court's regulation of the course and conduct of trial proceedings.  *Id.*, pp. 64-65.  Respondent contends it was reasonable for appellate counsel to determine there were no abuses of discretion, or that, if there were, a challenge would not succeed on appeal.  *Id.*, pp. 65-66.

Petitioner's allegations in support of the alleged abuses tend to misrepresent or exaggerate what happened at trial.  First, he claims that "Officer Perry testified that he attempted to engage Stanley in a consensual encounter (T: 100), however, when counsel sought to clarify Stanley's right to walk away, the trial judge interrupted and declared the testimony to be "irrelevant" (T: 100-101)."  Doc. 8, p. 17.  The term consensual encounter was not used, and the court did make a declaration that

testimony was irrelevant.  Counsel was interrupted for asking about a legal term, and

told it was irrelevant when he went on to explain the question.[21]  Counsel did not object

or pursue the question by arguing that it was relevant, and this issue was not preserved

for appeal.

Next Petitioner alleges, "Stanley testified that the victim pursued the charge after

observing her friend's vehicle in his driveway (T:120), but on cross-examination of the

victim, the judge declared testimony of the victim's motive to be irrelevant (T:50-51)."

Doc. 8, p. 17.  The court did not say the victim's motive was irrelevant.  It sustained an

objection as to inquiry whether Abbie was "a friend" to Berry as irrelevant, and counsel

did not argue it was relevant or pursue the question.[22]  This issue was not preserved for

appeal.

Petitioner claims he "was acquitted by jury trial of other charges brought by the

victim weeks prior to the present charge, which consisted of inconsistent statements of

the victim that contradicted her present testimony.  The trial judge forbid [sic] discussing

the previous trial (T:116) and repeatedly interrupted Stanley's testimony (T:118, 120,

---

[21] Perry was one of the officers present when Petitioner was arrested, and said they asked Petitioner to come out to them rather than them to him.  Ex. D, p. 100. Counsel asked if that was "police contact," the court said that was a legal term, so counsel continued, "I mean, in terms of police contact versus an investigatory stop based upon probable cause or articulable – ," and the court said "[t]hat's not relevant, Mr. Chin.  Ask a new question."  *Id.*, p. 101.  Counsel elicited testimony from Perry that he told Petitioner, "this is the Tallahassee Police, come over here," but that he did not tell him or indicate that they had a warrant or that Petitioner was under arrest.  *Id.*, pp. 100-101.

[22] On cross examination, counsel asked "do you know a girl named Abbie?" and Berry said "I know who she is, yes."  Ex. D, p. 50.  Counsel asked "[i]s Abbie a friend of yours," the prosecution made an objection to relevance which was sustained, and counsel asked a different question.  Ex. D, pp. 50-51.

122, 128)."  As previously discussed, it was defense counsel who, from the very

beginning of trial, wanted to avoid opening the door to other incidents or proceedings

involving Berry.  When the court told Petitioner not to mention the prior trial in his

testimony, there was no objection by counsel or by Petitioner himself .  Ex. D, p. 116.[23]

The issue was not preserved for appeal.

Finally, Petitioner claims that "[t]he trial court allowed jury members to ask

questions of witnesses, thus invading the province of the jury and specifically allowing

questions that would be self-serving to the victim (T:54).  The State then played on the

passions of the jury by basing its closing argument on questions that were not answered

(T:129, 153)."  Doc. 8, p. 17.

As to the allowing "self-serving" questions, the jury asked "why did Crystal call

Scott back?"  Ex. D, p. 53.  Counsel objected, saying "this would give her room to

maybe launch into some more theatrics or an open-ended question or open-ended

answer to that question," he thought it "would be disingenuous to the defendant and

self-serving to the witness."  *Id.*, p. 54.  Based on his general objection to the procedure

and specific objection to this question, he moved for mistrial if the court asked the

question.  *Id.*  The objection was overruled, the motion denied, and the court asked

Berry why she returned the phone call.  *Id.*, pp. 54-55.  She said Petitioner "was

---

[23] Out of the presence of the jury, counsel said he tried cases, was a party to the other case, and based on his review of the evidence in this case it was his recommendation that Petitioner exercise his right to remain silent.  Ex. D, pp. 114-115. Petitioner was placed under oath, the court told him it was his right and his decision to testify or to not testify, and Petitioner said he wanted to testify.  *Id.*, pp. 115-116.  The prosecutor said she hoped he would not "blurt out anything about that prior not guilty verdict," the court asked Petitioner if he understood he was not to talk about that, and Petitioner said he would not mention the prior trial or verdict.  *Id.*, p. 116.

threatening me and loud and angry and I just wanted him to calm down," and "make sure he was okay."  *Id.*, p. 55.  She say she "wanted to try to talk him out of it."  *Id.* Defense counsel asked and she agreed she had said she was trying to talk him out of it, and he recalled that earlier "[you] were indicating that you were doing this to tell him that you were going to go to the police station," and that was when she gave the phone to Jenkins.  *Id.*, p. 56.  Berry agreed.  *Id.*  She said that she "rushed right in" to the police station, so that part of her conversation was not said in the presence of Officer Jenkins. *Id.*

Petitioner has not explained why this was an abuse of discretion or reversible error.  Even if error, the limited testimony about why she called Petitioner, after she already testified that Petitioner kept calling and threatening her, but that she placed the call going to the police station,[24] was harmless.

The claim that the State "played on passions" in closing argument is contradicted by the cited portions of the record.[25]

---

[24] Berry testified about receiving some 30 calls on her cell phone before going to the police station that day, and said he threatened her life, "[t]hat he would shoot me and cut my face and kill himself."  *Id.*, pp. 441-42.  She said he sounded angry, loud and scary on the phone and she took the threats seriously.  *Id.*, p. 42.  She said she called him on the way, "[t]o let him know that I was going to the police station and try to calm him down," and stayed on the phone with him until she walked in and gave her phone to the duty officer.  *Id.*, pp. 42-43.  On cross examination she said she called him from the parking lot of the station, and agreed with counsel that, "that call that you had with Mr. Stanley when you walked in the station and he's making all of those horrible comments to you and everything was a call that you placed to him."  *Id.*, p. 49.

[25] Petitioner references Ex. D, pp. 129 and 153.  The jury wanted to ask Petitioner "who broke up with who?" and both sides agreed it was not a good question. Ex. D, p. 129.  Defense counsel argued to the jury in closing (as quoted *supra*) that if they were wondering who broke up with whom, or who was mad at whom, and if they were not sure which way to go, then they had a reasonable doubt.  *Id.*, pp. 152-153.

Petitioner has not demonstrated unreasonableness of appellate counsel for

failing to raise these claims, and certainly cannot satisfy § 2254(d).

**Ground Eleven**

Petitioner asserts ineffective assistance of appellate counsel for failing to raise

reversible error that "[t]he trial court failed to make proper inquiry following repeated

allegations of ineffective assistance of counsel prior to trial via written letter (R:2) and

during trial (T:116)." Doc. 8, p. 18. Petitioner notes this was raised in post conviction

proceedings but the court and State agreed this should be raised on direct appeal. *Id.*,

citing "(H:98)" (3.850 hearing) and "(AB:11)" (answer brief).

Respondent asserts that while Petitioner mentioned the trial court's refusal to

conduct a "*Nelson* hearing"[26] within his state petition for writ of habeas corpus, he did

not present it as a separate claim of ineffective assistance of appellate counsel. Doc.

18, pp. 67-68, referencing Ex. UU. It is argued the claim of ineffective appellate counsel

The prosecutor responded by arguing that "whether or not Mr. Stanley broke up with her or whether she broke up with him is totally irrelevant to the charges that we are here on today." *Id.*, p. 153

[26] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973). If a defendant wishes to discharge court appointed counsel before trial due to incompetency of counsel, "the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute." Hardwick v. State, 521 So. 2d 1071, 1074-75 (Fla. 1988) (quoting Nelson and approving this procedure).

is, therefore, procedurally barred, and Petitioner cannot show cause and prejudice or alternatively, actual innocence.  *Id.*, pp. 68-69.

Again, this court does not have the state court petition for writ of habeas corpus identified as Ex. UU.  But the claim presented here is insufficient on its face.  Petitioner references R:2, presumably a reference to the docket.  *See* Ex. A, p. 2.  The docket has an entry on February 22, 2005, for "LETTER FROM DEFENDANT TO JUDGE HANKINSON NO ACTION (2/10/05)," and an entry on April 15, 2005, for "LETTER FROM DEFENDANT TO JUDGE HANKINSON – NO ACTION REQUIRED PER JUDGE HANKINSON (4/15/05)."  Petitioner alleges "written letter," not indicating more than one, so it is not clear if there were two letters or if the second entry was made for the judge's "no action" determination.  See also Ex. X, p. 9 (brief on denial of post conviction relief, alleging that Petitioner wrote a letter "alleging ineffective assistance of counsel" on February 11, 2005, and raised it at trial by informing judge of the letter); Ex. QQ, p. 2 (Petitioner's second motion to renounce counsel, stating he "submitted a written statement to the trial court prior to trial alleging ineffective assistance of counsel, as well as statements of record alleging the same," and this was reversible error which appellate counsel should raise).

In the referenced portion of the transcript, Petitioner states he "would like to address the Court," and says:

> I sent a letter to your office.  I have requested certain witnesses be present here today.  And they were not made present to my disposal and my defense.

Ex. D, pp. 115-116.

No error that even *could* have been presented on appeal is shown, so Petitioner cannot satisfy the doubly deferential standard of § 2254(d) and Strickland. Petitioner has not alleged the content of any letters to the trial court, and they have not been identified in the file. He did not claim incompetency of counsel by stating during trial that he sent a letter about witnesses who were not present. *See generally*, McLean v. State, 29 So. 3d 1045, 1050-51 (Fla. 2010) ("a defendant is not entitled to a *Nelson* hearing 'where a defendant presents general complaints about defense counsel's trial strategy and no formal allegations of incompetence have been made. [An argument which] raised disagreement with trial strategy and did not assert a sufficient basis to support a contention that his attorneys were incompetent" did not show entitlement to hearing) (citations omitted).

**Ground Twelve**

Petitioner asserts ineffective assistance of appellate counsel for "failing to address the trial court's disregard to Stanley's invocation of attorney-client privilege prior to Attorney Dean LeBoeuf testifying," and asserts the trial court "forced" LeBoeuf to testify. Doc. 8, pp. 18-19. Respondent contends that while this was listed in the state habeas corpus petition as one of many errors in support of the claim raised here as ground ten, it was not presented as a freestanding claim so was not properly exhausted, is procedurally defaulted, and Petitioner is unable to demonstrate cause and prejudice or alternatively, actual innocence. Doc. 18, pp. 70-72. Respondent references Ex. UU, not before the court.

Petitioner asserts he raised this claim in his pro se brief as well as the state court habeas petition.  Doc. 19, p. 32, referencing Exs. KK and UU.[27]  If Petitioner is correct and the claim was presented, then rather than showing cause and prejudice he must satisfy § 2254(d) as well as Strickland.

This court should deny the claim on the merits notwithstanding any failure to exhaust.  The trial court denied the motion in limine because it found no attorney client relationship.  Petitioner testified that he actually talked to Bauer, not LeBoeuf.  Had appellate counsel read the Rule 3.850 transcript (as discussed above) or talked to Mr. Chin about the case, he would have learned that Petitioner wanted Chin to invoke the attorney client privilege as to LeBoeuf because it was Petitioner's contention he did not discuss anything with LeBouef.  There no attorney client relationship between Petitioner and LeBouef since he did not talk with LeBouef, and no communication which could be privileged.

**Ground Thirteen**

Petitioner claims ineffective assistance of appellate counsel for "failing to make proper argument."  Doc. 8, p. 19.  Specifically, Petitioner claims counsel raised only the unsuccessful analogy of the terms "Career Criminal Unit" and "high crime areas," and failed to argue that Officer Jenkins testified he was unable to verify the victim's claims, and "ignored" Petitioner's belief the injunction was not in effect.  Id., p. 19, citing AB:8-9 and T:76.  6.  He asserts:

---

[27] Ex. KK in this court's file is a one page order of the appellate court, strikingthe pro se initial brief as unauthorized since appointed counsel filed a brief.

> The State also insisted that Stanley testified he told an investigator that
> "he didn't remember anything" (AB: 8).  In reality, Stanley testified,
> "[Investigator Hollis] questioned me when I was in the jail.  I told her I had
> counsel.  She was being very rude with me.  I'm not going to sit there and
> answer questions and possibly incriminate myself.  I said, 'I don't
> remember anything.'  That was probably my best legal outlet." (T:127).
> *Id.*, pp. 19-20.

*Id.*, pp. 19-20.  He claims counsel "failed to make proper rebuttal," and it was unlawful

for an officer to ask questions when he said he was represented by counsel, even if

consent was given.  *Id.*, p. 19.

Respondent asserts that, as with grounds eleven and twelve, Petitioner did not

raise this as a freestanding ineffectiveness claim in his state habeas petition, so it was

not properly exhausted, is procedurally defaulted, and Petitioner is unable to

demonstrate cause and prejudice or alternatively, actual innocence to excuse his

default.  Doc. 18, pp. 73-76.

Petitioner replies that it was raised in Ex. UU and also presented in his second

motion to "denounce" counsel.  Doc. 19, p. 34, citing Ex. QQ, ground four.  There he

argued that his counsel (by reply brief) should have corrected the "manipulation" of facts

by the State (in the answer brief), by giving his full statement rather than only the portion

that "he didn't remember anything."  Ex. QQ, p. 3 (also referencing the appellate brief at

p. 8 and the trial record at p. 127).

Petitioner refers to his own trial testimony, in which he admitted he told the

investigator he did not remember anything and why he told her that.  There was no

objection to the testimony cited, and Petitioner does not point to anywhere in the record

showing that admission of what Petitioner said to the investigator was ever argued or

preserved for appeal.  His argument seems to be that appellate counsel was ineffective

for failing to point this out not as a separate issue on appeal but in his reply brief, because the answer brief took the statement out of context.

This is a far cry from stating a claim of ineffective assistance of appellate counsel for failing to raise reversible error.  Moreover, there is no indication of any twisting of the facts in the answer brief, which noted that Petitioner was confronted with his statement of not remembering things in cross examination, and he "claimed *that he had only told the investigator* that 'he did not remember anything.'"  *Id.*, p. 7 (citing p. 127 of the transcript) (emphasis added).  Petitioner is not entitled to relief under standards of <u>Strickland</u> and § 2254(d).

**Ground Fourteen**

Petitioner asserts that appellate counsel was ineffective for "failing to challenge the charging statute under the void-for-vagueness doctrine."  Doc. 8, p. 20.  He claims it was void as "the State held that Stanley committed a criminal offense by answering his personal telephone," that the victim had a history of using injunctions as a sword, and claims by analogy he "could lie to obtain a temporary injunction against a judge, show up in court, and have the judge arrested for being within 500 feet."  *Id.* (record reference omitted).  Petitioner notes that the injunction states that a person "may" be prosecuted for contact regardless of place or type of contact, and that the statute was enforced arbitrarily as the victim admitted to violating Petitioner's injunction against her. *Id.*, p. 21.

Respondent agrees that this was presented in state court and it appears the claim was exhausted, but does not waive the exhaustion requirement.  Doc. 18, pp. 76-77.  Respondent notes that the defense was that Petitioner did not believe the injunction

was in effect since the victim first made contact with him, but disagrees that the state

accused him of an offense for simply answering his telephone.  *Id.*, p. 77.  Officer

Jenkins was asked if he understood that a domestic injunction makes clear it remains in

effect even if the other person contacts the enjoined person, and is in effect until

dissolved by a court.  *Id.*, p. 78.  Trial counsel objected that this was argument and the

injunction was in evidence.  *Id.*  Respondent argues that the issue Petitioner contends

counsel should have raised – that the state said he could be guilty for answering his

telephone – did not exist because the argument was never made.  *Id.*, p. 79.[28]  It is

argued that the aggravated stalking statute is not vague, as it conveys sufficient warning

of prescribed conduct, and that the issue was not preserved for appellate review as it

was not raised by trial counsel.  *Id.*

From review of various portions of the record already discussed, it is clear that

the State did not argue Petitioner was guilty of aggravated stalking solely for answering

his telephone.  This claim is without merit.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

---

[28] Petitioner quotes the questioning of Jenkins and closing argument of the prosecutor, that a domestic violence injunction advises the respondent to the injunction that, even if the petitioner (obtaining the injunction) contacts them or is the one to initiate contact,"it's still a violation of the injunction."  Doc. 19, pp. 35-36, referencing Ex. D, pp. 80-81, 155 (other record references omitted).  Petitioner argues that "it's" refers to contact solely initiated by a Petitioner.  He was convicted under a statute (quoted *supra*) which makes it a crime to "knowingly, willfully, maliciously, and repeatedly follow[], harass[], or cyberstalk[] another person" in violation of an injunction.  It was he who argued in defense that he merely answered his telephone, and that defense made relevant that her contacts did not absolve him of compliance with the injunction."

certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that § 2254 petition for writ of habeas corpus filed by Scott Stanley, challenging the judgment in case number 2004-CF-2759, imposed by the Second Judicial Circuit, in and for Leon County, Florida, be **DENIED WITH PREJUDICE**, and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on November 28, 2011.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.